Charles BRIGHT, Appellant,

v.

AMERICAN GREETINGS CORPORATION; Thomas A. Nanney, Administrative Law Judge; and Workers' Compensation Board, Appellees,

and

American Greetings Corporation, Appellant,

v.

Charles Bright; Thomas A. Nanney, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 2000–SC–0714–WC, 2000–SC–0738–WC.

Supreme Court of Kentucky.

Dec. 20, 2001.

Thomas W. Moak, Stumbo, Moak & Nunnery, Prestonsburg, Counsel for Charles Bright.

W. Barry Lewis, Lewis & Lewis Law Offices, Hazard, Counsel for American Greetings.

## OPINION OF THE COURT

The claimant sustained a work-related injury to his lower back on June 10, 1997, but he continued to work until June 1, 1998. Shortly thereafter, he filed consolidated workers' compensation claims for the back injury and for a hearing loss that was allegedly caused by an exposure to hazardous noise at work. The results of a university evaluation that were introduced into evidence over the employer's objection included testing that revealed an AMA impairment and an audiologist's opinion that the impairment was caused by work-related noise exposure. Also introduced was evidence of an AMA impairment to the back that was apportioned equally to the injury, itself, and to the arousal of dormant, pre-existing degenerative changes.

After the Administrative Law Judge (ALJ) rejected the university evaluator's opinion concerning the cause of the hearing impairment and determined that half of the claimant's back impairment must be excluded because it was due to the natural aging process, the claimant appealed. Although the Workers' Compensation Board (Board) affirmed, in part, a majority reversed with regard to the weight to be afforded the university evaluator's testimony, and the entire Board reversed with regard to the exclusion for the natural aging process. Applying our then-recent decision in *Magic Coal Co. v. Fox,* Ky., 19 S.W.3d 88 (2000), the Court of Appeals reversed on the first issue and affirmed on the second. We affirm.

■ The claimant alleged that he sustained daily exposure to loud noise for 18 years, while working for the defendant-employer. He testified that he had noticed a significant worsening of his hearing during the last two years that he worked, that he presently had difficulty understanding normal conversation, and that he would be unable to communicate with others in the course of performing a job.

Dr. Windmill, an audiologist and the appointed university evaluator, performed audiometric testing. The claimant informed him that he had worked for the defendant-employer for 22 years as a bailer helper and that he was near the machine for four to eight hours each day. Dr. Windmill noted that the claimant "was exposed to loud noises from the bailer and the cutter" and that he did not wear hearing protection at any time. He determined that the claimant suffered from a 24% AMA hearing impairment and that the pattern of hearing loss was compatible with hazardous noise exposure in the workplace. In his opinion, the claimant's hearing loss was work-related.

The evidence concerning the level of noise exposure was conflicting, including the claimant's own testimony. Although he told Dr. Windmill that his working conditions were noisy, prior to filing the claim he had told his physicians that they were not noisy. The employer's human resources administrator testified that the claimant had, indeed, been a bailer helper but asserted that he was not exposed to loud noise in that capacity. He indicated that dosimeters (devices that record the time-weighted average of noise levels) were presently worn by workers and demonstrated that there was no excessive noise in the plant. This testing was performed after the claimant no longer worked at the plant. However, the former human resources administrator also testified and indicated that the company had never had a hearing loss claim in the 30 years that he had worked there.

The testimony of various physicians concerning the extent to which work for the defendant-employer contributed to the impairment also was conflicting. There was evidence that at least some of the impairment was age-related, and there was evidence that the claimant had suffered from an ear infection and hearing loss in 1993.

Rejecting Dr. Windmill's opinion that the hearing loss was due to the claimant's work for the defendant-employer, the ALJ pointed to the inconsistent histories of noise exposure and to the claimant's longstanding history of nonwork-related hearing loss before determining that he had failed to demonstrate an exposure to hazardous noise in the subject employment. The ALJ also noted evidence of his exposure to loud noises in the logging industry.

In *Magic Coal Co. v. Fox, supra*, we determined that KRS 342.315(2) creates a rebuttable presumption that is governed by KRE 301 and, therefore, does not shift the burden of persuasion. We explained that the provision does not restrict the ALJ's authority to weigh conflicting medical evidence and to choose which evidence to believe. We concluded, therefore, that an ALJ could choose to disregard the clinical findings and opinions of the university evaluator but must state a reasonable basis for doing so. In the instant case, the ALJ stated a reasonable basis for choosing to disregard Dr. Windmill's opinion that the hearing loss was caused by the claimant's employment for the defendant-employer. Under those circumstances, the decision was properly reinstated by the Court of Appeals.

█ With regard to the back injury, the ALJ focused upon testimony by Dr. Best that half of the claimant's 5% impairment was the result of "pre-existing degenerative changes" and excluded half of the impairment when calculating his income benefit. However, as was noted by the Board, degenerative changes are not necessarily age-related. Furthermore, Dr. Best used the DRE model when assessing the 5% impairment, and Chapter III of the AMA Guidelines specifically states that age-related changes were excluded when

drafting that model for assessing impairment. In any event, if pre-existing degenerative changes, themselves, are work-related, they are compensable. *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222, 225 (1976). Finally, if work-related trauma causes nonwork-related degenerative changes to be aroused into disability and to result in an impairment, that harmful change is compensable. *McNutt Construction v. Scott*, Ky., 40 S.W.3d 854, 859 (2001). Because the ALJ did not consider these factors, the claim must be remanded for further consideration of the extent to which the 5% impairment is compensable.

In a cross-appeal, the employer asserts that the testimony of an audiologist is inadmissible as medical evidence of causation. The employer objected to the admission of Dr. Windmill's testimony as a university evaluator because he was not a physician. KRS 342.0011(32) defines "physician" as meaning "physicians and surgeons, psychologists, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners acting within the scope of their license," but it does not include audiologists. Nonetheless, the ALJ admitted the testimony, noting that KRS 342.315(2) referred to "physicians and institutions performing evaluations" and to "designated evaluators." The Board affirmed, but the Court of Appeals did not address the admissibility of the testimony although the employer raised the issue. As we have interpreted KRS 342.315(2), an ALJ is authorized to weigh a university evaluator's testimony and to disregard it if a reasonable basis for doing so is stated. Under those circumstances, we conclude that testimony concerning the cause of a hearing impairment that is made by an audiologist who is designated as a university evaluator is admissible even though audiologists are not included in KRS 342.0011(32).

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., and COOPER, JOHNSTONE, and STUMBO, JJ., concur.

KELLER, J., concurs by separate opinion in which GRAVES, J., joins.

WINTERSHEIMER, J., concurs in result only.

KELLER, Justice, concurring.

Although I agree with the majority's resolution of the merits of this case, I write separately to clarify that I review decisions of the Court of Appeals in workers' compensation matters solely because this Court has accepted appellate review of such matters under its Rules of Civil Procedure. I must emphasize that I do not believe the Kentucky Constitution requires an appeal as a matter of right from the Court of Appeals to the Kentucky Supreme Court in workers' compensation matters. In my opinion, this Court, in *Vessels v. Brown–Forman Distillers Corporation*,[1] misconstrued the relevant constitutional provisions when it found that Kentucky Constitution § 115 requires an appeal to this Court as a matter of right, and I believe the time has come to reconsider the *Vessels* holding and to reexamine the amended CR 76.25(12)[2] which this Court enacted in the wake of *Vessels*.

1. Ky., 793 S.W.2d 795 (1990).

2. "Further review may be sought in the Supreme Court of a final decision or final order of the Court of Appeals in a Workers' Compensation matter, and shall be prosecuted in accordance with the rules generally applicable to other appeals pursuant to CR 76.12 and CR 76.36." CR 76.25(12).

I believe the language in Kentucky Constitution § 115[3] that refers to a right of appeal to "another court" in "civil cases" contemplates only those civil suits initially commenced actually in a court within the Court of justice—hence, the reason for the reference to "another court"—and does not apply to administrative workers' compensation matters.[4] As I interpret Kentucky Constitution § 111(2),[5] therefore, the Court of Appeals has appellate jurisdiction in workers' compensation matters only because our Rules of Civil Procedure—specifically SCR 1.030[6] and CR 76.25[7]—so provide.

By statute, the General Assembly has recognized this Court's authority to permit review by the Court of Appeals of Workers' Compensation Board decisions:

*The decision of the board shall be subject to review by the Court of Appeals pursuant to Section 111 of the Kentucky Constitution and rules adopted by the Supreme Court. The scope of review by the Court of Appeals shall include all matters* subject to review by the board and also errors of law arising before the board and *made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency.*[8]

In *Vessels*, however, this Court incorrectly equated a matter brought under the statutory workers' compensation scheme with a civil suit brought within the Court of Justice and found unconstitutional its own rule authorizing only discretionary appellate review in this Court of workers' compensation matters previously reviewed by the Court of Appeals.

[Kentucky Constitution] Section 116 gives the Supreme Court ". . . the power to prescribe rules governing its appellate jurisdiction, rule for the appointment of commissioners and other court personnel, and rules of practice and procedure for the Court of Justice." This section did not empower this Court to ignore the plain and unambiguous mandate of Section 115, which guarantees to all litigants the right of one appeal to another court, nor did it empower us to amend the constitution. CR 76.25(12)

---

**3.** "In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court, except that the Commonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law, and the General Assembly may prescribe that there shall be no appeal from that portion of a judgment dissolving a marriage. Procedural rules shall provide for expeditious and inexpensive appeals. Appeals shall be upon the record and not by trial de novo." KY.CONST. § 115.

**4.** *See* 2 Am.Jur.2d *Administrative Law* § 641 ("Statutory proceedings for judicial review in controversies arising before administrative agencies are not civil actions for the purpose of construing constitutional limitations upon the jurisdiction of an appellate court in civil actions at law." *Id.*).

**5.** "The Court of Appeals shall have appellate jurisdiction only, *except that it may be autho-*

*rized by rules of the Supreme Court to review directly decisions of administrative agencies of the Commonwealth,* and it may issue all writs necessary in aid of its appellate jurisdiction, or the complete termination of any cause within its appellate jurisdiction. *In all other cases, it shall exercise appellate jurisdiction as provided by law.*" KY.CONST. § 111(2) (emphasis added).

**6.** "Final decisions of the Workers' Compensation Board are subject to review by the Court of Appeals in accordance with procedures set out in the Rules of Civil Procedure." SCR 1.030(3).

**7.** "Pursuant to Section 111(2) of the Kentucky Constitution and SCR 1.030(3), decisions of the Workers' Compensation Board shall be subject to direct review by the Court of Appeals in accordance with the procedures set out in this Rule." CR 76.25(1).

**8.** KRS 342.290 (emphasis added).

purports to do just that and we, therefore, declare that rule to be unconstitutional.

By declaring CR 76.25(12) unconstitutional, workers' compensation claims that are first judicially reviewed in the Court of Appeals pursuant to KRS 342.290, and there ruled upon, may be appealed to the Kentucky Supreme Court as a matter of right pursuant to Section 115 of the Kentucky Constitution.[9]

The *Vessels* majority appears to have ignored Kentucky Constitution § 110(2)(b), which creates original appellate jurisdiction in the Kentucky Supreme Court only for a narrowly defined set of criminal cases and allows this Court, by rule, to provide for other appellate jurisdiction:

Appeals from a judgment of the Circuit Court imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court. *In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as provided by its rules.*[10]

It is axiomatic that, when interpreting rules, statutes, and constitutional provisions, this Court should seek to harmonize such provisions rather than adopting constructions which render portions of such provisions meaningless.[11] The *Vessels* majority's conclusions follow its characterization of a statutory workers' compensation matter as a "civil case," but create a novel type of "civil case"—apparently not contemplated by Kentucky Constitution § 110(2)(b)—for which the Supreme Court must accept appellate jurisdiction.

Similarly, the *Vessels* majority's construction of Kentucky Constitution § 115 renders superfluous—if not moots—the language in Kentucky Constitution § 111(2) authorizing this Court to adopt rules creating appellate jurisdiction in the Court of Appeals for "decisions of administrative agencies of the Commonwealth." If workers' compensation actions are "civil cases" within the contemplation of § 115, the language in § 111(2) appears meaningless because our Constitution already requires appellate review. If, as I suggest, this Court interprets Kentucky Constitution § 115 to guarantee a right of appeal to another court only for those civil and criminal cases initially commenced within the Court of Justice, and not for administrative determinations, no such tension exists between these constitutional provisions.

Accordingly, I would overrule *Vessels* and amend CR 76.25(12) to read:

Discretionary review may be sought in the Supreme Court of a final decision or final order of the Court of Appeals in a Workers' Compensation matter, and the request for such review shall be prosecuted in accordance with Civil Rule 76.20.[12]

---

**9.** *Vessels v. Brown–Forman Distillers Corporation, supra* note 1 at 798.

**10.** Ky.Const. § 110(2)(b) (emphasis added).

**11.** *See Williams v. Commonwealth,* Ky., 829 S.W.2d 942, 944 (1992); *Ledford v. Faulkner,* 661 S.W.2d 475 (1983); *Commonwealth v. Mullins,* 296 Ky. 190, 176 S.W.2d 403 (1943).

**12.** This amended CR 76.25(12) was recently proposed and discussed at the Hearing on Proposed Amendments to the Rules of Civil Procedure at the Kentucky Bar Association's Summer 2001 Convention. When the Court subsequently considered the proposed amendment during the October 2001 Court Conference, the Court voted against the rule change—hopefully largely because of the constraints of the *Vessels* precedent. I intend for my dissenting opinion today to represent a first step towards reexamining *Vessels*.

To those who would argue that this Court should retain the *Vessels* majority's construction of Kentucky Constitution § 115 to ensure stability in the law under the doctrine of stare decisis, I would submit that the equities supporting such a doctrine in the construction of statutory law are not present in a question of constitutional interpretation, and this Court has a duty to revisit its erroneous constitutional interpretation:

> [*S*]*tare decisis* has never been thought to stand as an absolute bar to reconsideration of a prior decision, especially with respect to matters of constitutional interpretation. Where the Court errs in its construction of a statute, correction may always be accomplished by legislative action. Revision of a constitutional interpretation, on the other hand, is often impossible as a practical matter, for it requires the cumbersome route of constitutional amendment. *It is thus not only our prerogative but also our duty to re-examine a precedent where its reasoning or understanding of the Constitution is fairly called into question. And if the precedent or its rationale is of doubtful validity, then it should not stand.*[13]

Because of a mistaken belief that our constitution required us to amend CR 76.25, however, this Court has adopted a rule of procedure that insulates these constitutional provisions from reinterpretation and leaves little space for critical reexamination. The constitution *allows* this Court to adopt a rule which permits an additional appeal of right to this Court as a matter of right. As long as that rule is in place, however, our ability to revisit our previous erroneous constitutional interpretation will be limited, and we will have bracketed away questions concerning whether this additional layer of mandatory review from an ALJ determination—a total of three (3) layers of review—is appropriate in light of Kentucky Constitution § 115's mandate that "[p]rocedural rules shall provide for expeditious and inexpensive appeals."[14]

As I stated previously, I believe it is time for this Court to reconsider *Vessels* and to reexamine CR 76.25(12). Until that time, however, I emphasize that I review the merits of workers' compensation matters brought before this Court by appeal not because I believe such review is constitutionally mandated, but solely because this Court has chosen, in my opinion improvidently, to accept appellate jurisdiction over such matters by adopting CR 76.25(12).

GRAVES, J., joins this concurring opinion.

---

**13.** *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 627–8, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Powell, J., concurring) (emphasis added). *See also Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Smith v. Allwright,* 321 U.S. 649, 665, 64 S.Ct. 757, and n. 10, 88 L.Ed. 987 (1944).

