# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# Supreme Court of Kentucky

## 2019-SC-000264-WC

KROGER                  APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                  CASE NO. 2018-CA-000806
WORKERS' COMPENSATION BOARD NO. 16-WC-65271

BETTY JO ROBINSON, THE WORKERS'           APPELLEES
COMPENSATION BOARD, AND
HONORABLE TANYA PULLIN,
ADMINISTRATIVE LAW JUDGE

## MEMORANDUM OPINION OF THE COURT

### REVERSING AND REINSTATING

The Workers Compensation Board (Board) affirmed the Administrative

Law Judge's (ALJ) dismissal of Betty Jo Robinson's claim for benefits for a

cumulative-trauma injury to her right wrist allegedly sustained while working

for Kroger. The Court of Appeals' opinion vacated the Board's opinion and

remanded the claim to the Board with directions to address whether repetitive

motion aroused a pre-existing, dormant condition into disabling reality.

Kroger argues here that the Court of Appeals improperly substituted its

interpretation of the evidence for that of the fact-finder, the ALJ, and that the

ALJ correctly dismissed Robinson's claim because she did not meet her burden

of establishing that the injury to her wrist was caused by her work at Kroger.

After careful review, we agree with Kroger, reverse the opinion of the Court of Appeals, and reinstate the opinion of the Board.

## I. BACKGROUND.

Robinson began working for Kroger in 2013. For the first year and a half, she worked part-time, performing duties such as preparing party trays, slicing and shredding meats, and working in the bakery. After going full-time, she took on the additional duty of working the chicken fryers. Robinson testified that on October 1, 2016, she started to feel burning pain and numbness in her right wrist and fingers.[1] That same day, she saw Dr. Johnson at a Norton Immediate Care, who placed her in a splint, prescribed ibuprofen, and took her off work for one day. Robinson continued to suffer pain and numbness following the incident on October 1, 2016. She followed up with her primary-care physician and received treatment from several physicians, specialists and physical therapists, including Louisville Arm and Hand, KORT Physical Therapy, Baptist Health, and Norton Occupational Medicine. Diagnoses were "tendonitis," "overuse syndrome," "carpal tunnel syndrome," and finally, a degenerative tear, referred to as a "TFCC" tear.

---

[1] The parties disagree as to whether these adverse symptoms began while Robinson was at work or at home. Robinson claims that while she had noticed some tingling in her wrist in the days before the disputed event occurred on October 1, 2016, on that date she started experiencing tingling, numbness, and burning pain in her wrist while she was preparing chicken at work. In response, Kroger points to the report from Robinson's first doctor's visit on October 1 with Norton Immediate Care, which indicated that Robinson reported that the injury occurred at "home." However, a report compiled by Norton Immediate Care during Robinson's visit two weeks later stated that Robinson reported the incident location as "work." All later reports compiled by Robinson's physicians indicated that she reported that the pain in her wrist began while she was frying chicken at work.

2

Despite undergoing several treatments with medication, physical therapy, wearing a wrist brace, splints, and a cast, and otherwise restricting use of her wrist, Robinson's wrist pain continued. She reported her injury to management at Kroger sometime during October of 2016, and Kroger sent her to Dr. Jeri Reed at Norton's Medical Center. Robinson did not work at Kroger after October 12, 2016.

In December 2016, Dr. Antony Hazel of Louisville Arm and Hand performed an MR arthrogram on Robinson, results of which suggested Robinson "had degenerative changes of the central triangular fibrocartilage, with partial thickness degenerative tear at the ulnar attachment and degenerative fraying and full-thickness perforation tear of the membranous portion of the scapholunate ligament." Dr. Hazel reported that "given that [Robinson] did not have previous wrist pain [before the incident on October 1, 2016], her symptoms may have been related to her activity at work. . .[but] the exact causalities can be difficult to assign and central TFCC tears can be associated with repetitive action and [Robinson's] work can aggravate this condition." Robinson underwent right-wrist arthroscopy with debridement of the TFCC tear and was referred for occupational therapy at her post-surgery follow-up fifteen days later. Robinson's movement restrictions were initially relaxed a couple of months after surgery but were reinstated after symptoms again worsened. As of August 2017, Robinson was still experiencing some pain and was only allowed to perform "light duty."

In December 2016, Robinson filed this injury claim against Kroger. During the course of her claim, Robinson was examined by two independent

3

medical examiners, Dr. Jules Barefoot and Dr. Richard DuBou. The ALJ

summarized Dr. Barefoot's and Dr. DuBou's opinions as follows:

> **Dr. Jules Barefoot**- [Robinson] filed into evidence the April 5, 2017 independent medical examination (hereinafter "IME") of Dr. Barefoot. Dr. Barefoot took a history, conducted a physical examination, and reviewed medical records. Dr. Barefoot's impression was "right wrist arthroscopy with debridement of TFCC, January 5, 2017." He said, "It is more likely than not that these work activities accelerated or hastened her underlying dormant and asymptomatic condition into symptomatic painful disabling reality." He said the arthroscopy was due to her repetitive work activities. He noted that [Robinson] reported that her work activities required repetitive flexion and extension as well as supination and pronation of her forearm. He said this would be the type of activities that would be expected to cause injury to her TFCC over time. He said, "By her medical history and the available medical records, workplace activities were the cause of her initial wrist pain for which she sought medical treatment." Dr. Barefoot said that he based his opinion on work-relatedness on [Robinson's] description of her work activities. Dr. Barefoot said [Robinson] reported that she was required to lift baskets with six chicken breasts in them and felt that this repetitive lifting was the etiology of her wrist pain, which began in late September 2016.
> Dr. Barfoot also completed a questionnaire dated April 5, 2017 wherein he gave a diagnosis of TFCC.
>
> . . .
>
> **Dr. Richard DuBou**- [Kroger] filed in evidence a June 6, 2017 report from Dr. Dubou wherein he opined that [Robinson's] TFCC injury was not related to work for [Kroger]. Dr. Dubou said "all evidence pointing to a degenerative tear of the TFCC" made it definitely more probable that this is a degenerative tear. He also said that it was unlikely for it to occur in as little as two years. He said a generative tear is far more likely. He said, "with her doing mostly non-forceful movements and her two years of working at Kroger, I believe these are degenerative, but not related to her work at Kroger." He had reviewed Dr. Barefoot's report and said there was no reason noted in Dr. Barefoot's IME that explains why he felt the TFCC injury was related to [Robinson's] work.
> [Kroger] also filed into evidence the April 4, 2017 IME report from Dr. Dubou. He took a history from [Robinson], performed a physical examination and reviewed medical records. He diagnosed a tear in the TFCC on the right, not relate to her work for [Kroger]. He said that on physical examination, [Robinson] had no signs of carpal tunnel, cubital tunnel, thoracic outlet compression or

4

decreased flow through the ulnar or radial arteries. He noted that her grip strength was still significantly down and that she had had surgery on January 5, 2017.

The ALJ dismissed Robinson's claim, finding that based on the medical evidence, paying particular attention to the opinion of Robinson's treating physician, Dr. Hazel, Robinson had not met her burden of proving that the injury was work related. The ALJ found more persuasive the opinion of Dr. Dubou, a specialist in hand surgery, who opined that Robinson's injury was not related to her work at Kroger and that it was "definitely more probable" to be a degenerative tear. The ALJ found Dr. Dubou's opinion more persuasive, noting that Dr. Hazel's treatment records and Robinson's own testimony supported Dr. Dubou's opinion, especially because Robinson's symptoms did not improve even after nearly three months off work.

On Robinson's motion for reconsideration, she argued that the ALJ's finding that Robinson's TFCC tear was a degenerative condition does not resolve the issue as to whether Robinson's injury was compensable under *McNutt Construction v. Scott* as a work-related arousal of a pre-existing dormant condition into disabling reality.[2] Robinson further argued that the medical evidence was "uncontroverted" that Robinson's work for Kroger aggravated the naturally occurring degenerative changes based upon Dr. Barefoot's opinion. She argued that Dr. Dubou's report did not refute Dr. Barefoot's assessment

---

[2] *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854, 859 (Ky. 2001) ("Where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the proximate cause of the harmful change; hence, the harmful change come within the definition of an injury.")

5

because it did not consider whether Robinson's degenerative condition became symptomatic sooner because of her work activities at Kroger.

The ALJ agreed on reconsideration that when a "work-related trauma causes nonwork-related degenerative changes to be aroused into disability and to result in impairment, that harmful change is compensable."[3] But the ALJ rejected Robinson's argument that Dr. Dubou's medical opinion neglected to consider this possibility. The ALJ reiterated that she found Dr. Dubou's opinion to be more persuasive, and relied heavily on the following portions of Dr. Dubou's letter accompanying his report:

> In response to your questions, I do not see how Dr. Barefoot made the determination that the TFCC injury was related to [Robinson's] work at Kroger. I left a note in my original report as to the occasional causes of TFCC tear[s] and even over a shorter period of two years or longer, the book notes that a combination of factors and risks, force in repetition, force in posture have insufficient evidence. Vibration, insufficient evidence. Highly repetitive work alone or in combination with other factors, insufficient evidence. Forceful work, insufficient evidence. Awkward posture, insufficient evidence. Length of employment, insufficient evidence. [F]or nonoccupational risk factors, age has very strong evidence. Anatomy, very strong evidence. BMI, insufficient evidence. The book does note that patients with ulnar negative variance had fewer degenerative changes, but by contrast, tears on the peripheral rim of the TFCC usually on the radial side are more commonly traumatic in origin.

> Please note again that there was no trauma involved when Ms. Robinson felt pain in her wrist. It would be unlikely for this tear to be traumatic since there was no ulnar variance and the tears are mostly central.
>
> . . .

> At the present time[,] with all the evidence pointing to a degenerative tear of the TFCC, I would state that it is definitely

---

[3] *Bright v. Am. Greetings Corp.*, 62 S.W.3d 381, 384 (Ky. 2001).

more probable that this is a degenerative tear. It would be unlikely for it to occur in as little as two years. . . .

[The explanation of degenerative tear classifications in Green's Hand Book of Hand Surgery] does not give us a totally positive diagnosis, but it does seem that a degenerative tear is far more likely. With [Robinson] doing mostly nonforceful movements in her two years of working at Kroger, I believe these are degenerative, but not related to her work at Kroger. . . .

There is no reason noted in Dr. Barefoot's IME that explains why he feels that the TFCC injury was related to [Robinson's] work. . . .

In reliance on Dr. Dubou's analysis, the ALJ denied Robinson's petition for reconsideration based on the finding that there were no issues left unresolved by her initial opinion. The ALJ stated that it was clear that Dr. Dubou did consider whether Robinson's work brought into disabling reality a dormant condition because Dr. Dubou, after reviewing Dr. Barefoot's report, stated that he did not see how Dr. Barefoot concluded that Robinson's injury was related to her work and opined several times that Robinson's injury was not related to her work for Kroger. The ALJ also noted that it was important to her previous opinion and continued reliance on Dr. Dubou's opinion that Dr. Dubou reviewed Robinson's work activities and took those into account when forming his medical opinion.

On Robinson's appeal to the Board, she argued that the ALJ failed fully to address causation and that the "uncontroverted" evidence supported a finding of a work-related injury. The Board rejected Robinson's argument that the ALJ failed to make sufficient findings of fact, noting that the ALJ outlined all relevant evidence in the initial opinion and order and provided an additional five pages of findings in her order denying Robinson's petition for reconsideration. The Board also rejected Robinson's argument that Dr.

7

Barefoot's report indicating that Robinson's TFCC tear was a degenerative condition that became symptomatic because of her work at Kroger was "uncontroverted." The Board, in reliance on the letter attached to Dr. Dubou's report, found that Dr. Dubou's opinion constitutes substantial evidence in support of the ALJ's determination and the other evidence presented did not compel a different result requiring reversal of the ALJ's dismissal. Accordingly, the Board affirmed the ALJ's opinion and order dismissing Robinson's claims because she did not sustain her burden of showing that she sustained a work-related injury.

The Court of Appeals agreed with Robinson that the medical evidence compelled the conclusion that, as Dr. Barefoot opined, Robinson's underlying degenerative condition was brought into disabling reality by the physical requirements of her job at Kroger. The Court of Appeals found that Dr. Dubou's opinion did not specifically address whether Robinson's underlying degenerative condition was aroused by her work activities. Instead, Dr. Dubou's opinion only addressed whether Robinson had sustained a traumatic injury. In contrast, the Court of Appeals found that Dr. Barefoot's opinion did specifically address this issue and found that such work activities did arouse Robinson's underlying condition. Because Dr. Barefoot's finding was uncontroverted by the medical evidence presented to the ALJ, the Court of Appeals found that the evidence compelled a finding that Robinson sustained a compensable injury under the standard established in *McNutt Construction*.[4] So

---

[4] *McNutt Constr.*, 40 S.W.3d at 859 ("Where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment,

8

the Court of Appeals vacated the Board's opinion and remanded the case to the Board to address whether Robinson's repetitive work aroused a pre-existing, dormant condition into disabling reality. Kroger appealed to this Court solely on the issue of whether Robinson met the threshold burden of proving that she sustained a work-related injury under KRS 342.0011(1).[5]

## II. ANALYSIS.

### A. Standard of Review.

"When reviewing an ALJ's decision, this Court will reverse only if the ALJ overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice."[6] "The ALJ, as the finder of fact, and not the reviewing court, has the sole authority to determine the quality, character, and substance of evidence. Where, as here, the medical evidence is conflicting, the question of which evidence to believe is the exclusive province of the ALJ."[7] On appellate review, the issue is whether "substantial evidence" supports the ALJ's decision.[8] "However, we review the ALJ's application of the law *de novo*."[9] "On appeal, our standard of review of a decision of the Workers'

---

the trauma is the proximate cause of the harmful change; hence, the harmful change come within the definition of an injury.").

[5] *Kentucky Revised Statutes.*

[6] *U.S. Bank Home Mortgage v. Schrecker*, 455 S.W.3d 382, 384 (Ky. 2014) (citing *Western. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992)).

[7] *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985); and *Pruitt v. Bugg Bros.*, 547 S.W.2d 123 (Ky. 1977)).

[8] *Wetherby v. Amazon.com*, 580 S.W.3d 521, 526 (Ky. 2019) (citing *Whittaker v. Rowland*, 998 S.W.2d 479. 481–82 (Ky. 1999)).

[9] *Schrecker*, 455 S.W.3d at 384 (citing *Finley v. DBM Techs.*, 217 S.W.3d 261, 264 (Ky. App. 2007)).

Compensation Board 'is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.'"[10]

## B. The Court of Appeals erred in vacating the opinion of the Board.

The only issue raised before this Court is whether the ALJ erred in finding that Robinson failed to satisfy her burden of showing that she sustained a work-related injury as the term is defined in KRS 342.0011(1). This Court finds no error by the ALJ's dismissal.

KRS 342.0011(1) provides the following:

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury[.]

Kroger argues that the ALJ did not err when she dismissed Robinson's claim for failing to meet her burden of establishing that the injury to her wrist was caused by her work at Kroger. Furthermore, Kroger argues that the Court of Appeals improperly substituted its judgment and interpretation of the evidence for that of the ALJ by impermissibly rejecting a reasonable

---

[10] *Pike County Bd. of Educ. v. Mills*, 260 S.W.3d 366, 368 (Ky. 2008) (quoting *Western Baptist Hosp.*, 827 S.W.2d at 687–88).

10

interpretation by the ALJ of Dr. Dubou's report. Kroger argues that while the Court of Appeals' interpretation of Dr. Dubou's report might also be reasonable, it is solely the role of the ALJ to reject any testimony and to believe or disbelieve various parts of evidence, regardless of whether it comes from the same witness or the same adverse party's total proof.[11]

In response, Robinson responds that the Court of Appeals was correct in finding that Dr. Dubou's report and attached letter did not consider whether her degenerative injury became symptomatic because of her work at Kroger. Instead, Robinson asserts that the Court of Appeals was correct that Dr. Dubou's report only considered whether the injury was a result of trauma or an underlying condition. Robinson argues that because the report by Dr. Barefoot, which concluded that Robinson's TFCC tear was a degenerative condition that became symptomatic as a result of her work at Kroger, was thus "uncontroverted" by Dr Dubou's opinion, the ALJ was not free to reject this evidence without reasonably explaining the basis for such determination.[12] Furthermore, Robinson continues to rely on this Court's opinion in *McNutt Construction v. Scott* to support her argument that the ALJ erred in dismissing her claim because she has a compensable injury as defined in KRS 342.0011(1).

In *McNutt Construction*, this Court interpreted the definition of "injury" as provided in KRS 342.0011(1). In that case, the claimant, a carpenter, filed a

---

[11] *Whittaker,* 998 S.W.2d at 482.

[12] *Commonwealth v. Workers' Comp. Bd.,* 697 S.W.2d 540, 541 (Ky. App. 1985); *Collins v. Castleton Farms, Inc.,* 560 S.W.2d 830, 831 (Ky. App. 1977).

disability claim for a work-related injury sustained to his back when he fell through the floor of a house while working for the defendant employer.[13] The claimant's surgeon testified that fifty percent (50%) of the claimant's impairment rating could be attributable to the trauma's arousal of a pre-existing condition or to the natural aging process.[14] The ALJ found, and the Board and the Court of Appeals affirmed, that the claimant was permanently and totally occupationally disabled and rejected the employer's argument that there should be an exclusion from the award for the natural aging process, noting that the surgeon specifically stated that the accident itself caused the back problems.[15] On appeal to this Court, the employer continued to argue that disability that results from the arousal of a prior, degenerative condition should not be considered a compensable "injury" because the condition is due to the natural aging process.[16] The employer pointed to the part of the surgeon's testimony stating that "half of the functional impairment to claimant's spine was due to the arousal of a prior, dormant degenerative condition."[17]

This Court agreed with the lower courts that the claimant in that case suffered a compensable injury as defined by KRS Chapter 342.[18] In considering KRS 342.0011(1), this Court provided the following analysis:

---

[13] *McNutt Constr.*, 40 S.W.3d at 856.

[14] *Id.* at 857.

[15] *Id.* at 857–58.

[16] *Id.* at 859.

[17] *Id.*

[18] *Id.*

12

As we construe the definition of "injury," the critical question is one of causation. Although KRS 342.0011(1) clearly indicates that the effects of the natural aging process are not considered to be an "injury," it also clearly indicates that work-related trauma "which is the proximate cause producing a harmful change in the human organism" is an "injury." When the two provisions are considered in concert, it appears that their purpose is to emphasize that only those harmful changes which are proximately caused by work-related trauma are compensable pursuant to Chapter 342. Where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the proximate cause of the harmful change; hence, the harmful change comes within the definition of an injury.[19]

Accordingly, this Court affirmed the decision of the Court of Appeals, finding that the ALJ's conclusion that the claimant's impairment rating was wholly attributable to the injury sustained because of his work for the defendant employer was not unreasonable or erroneous as a matter of law.[20]

Here, we agree with the ALJ and the Board that while *McNutt Construction* does allow for compensation when a degenerative injury is brought into disabling reality because of the claimant's work for the defendant employer, the ALJ did not err by concluding that Robinson failed to satisfy her burden of showing that the worsening of her degenerative TCFF tear was caused by her work at Kroger. Unlike in *McNutt Construction* where the claimant's surgeon testified that the claimant's degenerative back injury was caused by the work-related trauma, Dr. Dubou's report and accompanying letter states multiple times that Robinson's degenerative wrist injury was not caused by her work at Kroger. It was within the sole purview of the ALJ to

---

[19] *Id.*

[20] *Id.* at 861.

13

believe or disbelieve various parts of evidence.[21] So the Court of Appeals erred by substituting its own assessment of Dr. Dubou's report for that of the ALJ and by concluding, contrary to the ALJ, that Dr. Barefoot's opinion was "uncontroverted" by Dr. Dubou's opinion, compelling a different result than that reached by the ALJ.

Furthermore, Dr. Barefoot's report does use similar language to that used by this Court in *McNutt Construction* to indicate that Robinson suffered a compensable injury,[22] and Dr. Dubou's report and letter does not. However, this does not render unreasonable the ALJ's inference that Dr. Dubou's report considered whether Robinson's injury was aroused by her work at Kroger and rejected this theory. We agree with the Board that the ALJ's findings were supported by substantial evidence because it is clear from the record Dr. Dubou did consider whether Robinson's work brought into disabling reality a dormant condition. Dr. Dubou, after reviewing Dr. Barefoot's report, stated that he did not see how Dr. Barefoot concluded that Robinson's injury was work-related, opined several times that her injury was not related to her work for Kroger, and reviewed her work activities and took those into account when forming his medical opinion.

---

[21] *Whittaker*, 998 S.W.2d at 482.

[22] Dr. Barefoot's report stated that, "It is more likely than not that these work activities accelerated or hastened her underlying **dormant** and asymptomatic condition into **symptomatic painful disabling** reality." (emphasis added). This language is very similar to the language used by this Court in *McNutt Construction* to explain why the claimant's injury in that case was compensable under KRS 342.0011(1). *McNutt Constr*, 40 S.W.3d at 859 ("Where work-related trauma causes a dormant **degenerative condition to become disabling** and to result in a functional impairment, the trauma is the proximate cause of the harmful change; hence, the harmful change comes within the definition of an injury[.]").

## III.    CONCLUSION.

Having concluded that the Court of Appeals erroneously substituted its interpretation of disputed evidenced for that of the ALJ, we reverse the opinion of the Court of Appeals and reinstate the opinion of the Board affirming the ALJ's dismissal of Robinson's claim.

Minton, CJ, Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. Nickell, J., not sitting.  All concur.


COUNSEL FOR APPELLANT:

Kroger
James Burke Cooper
Boehl, Stopher & Graves, LLP


COUNSEL FOR APPELLEE BETTY JO ROBINSON:

Charles E. Jennings
Udell Barry Levy
Jennings Law Office

COUNSEL FOR APPELLEE WORKERS COMPENSATION BOARD:

Michael W. Alvey

Honorable Tanya Gaye Pullin, Administrative Law Judge

15