# Supreme Court of Kentucky

## 2021-SC-0356-WC

TRACY SCOTT TOLER                                                    APPELLANT


                              ON APPEAL FROM COURT OF APPEALS
V.                                      NO. 2021-CA-0325
                              WORKERS' COMPENSATION BOARD
                                    NO. 2018-WC-82397


OLDHAM COUNTY FISCAL COURT,                                         APPELLEES
HONORABLE JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD


## ORDER DENYING THE PETITION FOR REHEARING AND GRANTING THE PETITION FOR MODIFICATION

The Petition for Rehearing filed by Appellee Oldham County Fiscal Court, of the Opinion of the Court, rendered June 16, 2022, is DENIED. The Petition for Modification or Extension filed by Appellee Oldham County Fiscal Court, of the Opinion of the Court, rendered June 16, 2022, is GRANTED to correct typographical errors in the Opinion.

All sitting. All concur.

ENTERED: December 15, 2022.


_____
CHIEF JUSTICE

# Supreme Court of Kentucky

### 2021-SC-0356-WC

TRACY SCOTT TOLER                                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                            NO. 2021-CA-0325
WORKERS' COMPENSATION BOARD
NO. 2018-WC-82397

OLDHAM COUNTY FISCAL COURT,                                           APPELLEES
HONORABLE JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**REVERSING AND REMANDING**

Officer Tracy Toler (Officer Toler) challenges the Court of Appeals' opinion which affirmed the Workers' Compensation Board (the Board) and the Administrative Law Judge (ALJ). Officer Toler's appeal requires this Court to address, as a matter of first impression, whether a physician that is not licensed in Kentucky meets the definition of "physician" under KRS[1] 342.0011(32). After review, we reverse and remand this case for further proceedings.

---

[1] Kentucky Revised Statute.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. On January 16, 2018, Officer Toler sustained a work-related injury to his left knee. He was placed on light duty on January 17. On April 30, 2018, Dr. Nicolas Kenney (Dr. Kenney) surgically repaired Officer Toler's knee by performing a left knee arthroscopy with a partial medial, lateral meniscectomy. Dr. Kenney released Officer Toler to return to full duty on August 8, 2018.

On December 5, 2018, Dr. Craig Roberts (Dr. Roberts) conducted an independent medical examination (IME) on Officer Toler. Dr. Roberts diagnosed left knee medial lateral meniscus tears that required surgery. Officer Toler reported that he continued to have occasional sharp knee pain in the anterior portion of his knee, and that the pain was generally a three out of ten on a scale of one to ten. Dr. Roberts opined that Officer Toler had reached maximum medical improvement, and assessed a 4% impairment rating for Officer Toler's surgery and a 2% impairment rating for pain, equaling a 6% whole person impairment rating. Dr. Roberts reasoned that the additional 2% rating for pain was appropriate based on Table 18-1 of the 5th Edition of the *AMA Guides to the Evaluation of Permanent Impairment*, which states: "If pain-related impairment appears to increase the burden of the individual's condition slightly, the examiner may increase the percentage found ... by up to 3%." Officer Toler submitted Dr. Roberts' IME as an attachment to his Application for Resolution of a Claim, which he filed on January 7, 2020.

To contest Dr. Robert's 6% impairment rating, Officer Toler's employer,

2

Oldham County Fiscal Court (Oldham) filed a report by Dr. Christopher Brigham (Dr. Brigham). Dr. Brigham did not physically examine Officer Toler, but instead reviewed his medical records. Dr. Brigham agreed with Dr. Roberts' assignment of a 4% impairment rating for Officer Toler's surgery, but believed an additional 2% impairment rating for pain was inappropriate. Dr. Brigham provided a thorough, multiple-page explanation for his conclusion, which included the following:

> In defining the rating provided in the Fifth Edition for diagnoses, including procedures such as a partial medial and lateral meniscectomy, it is assumed that there are residual symptoms and mild interference with activities of daily living. [Officer Toler's] mild complaints of pain and mild interference with activities of daily living is not unexpected eight months following his surgery. [. . .]
>
> Pain itself is a subjective experience and influenced by psychosocial issues. It is probable that his mild complaints of pain, secondary to surgery, would decrease further with time.
>
> According to the records, [Officer Toler] does have normal or expected pain associated with his surgical procedure. The Guides' impairment ratings currently include allowances for the pain that individuals typically experience when they suffer from various injuries or diseases. [. . .]
>
> Section 18.3b <u>When This Chapter Should Not Be Used to Rate Pain-Related Impairment</u> lists the following situations:
>
>> 1. When Conditions Are Adequately Rated in Other Chapters of the Guides
>> 2. When Rating Individuals With Low Credibility
>> 3. When There Are Ambiguous or Controversial Pain Syndromes
>
> <u>When Conditions Are Adequately Rated in Other Chapters of the Guides</u> explains:
>
>> Examiners should not use this chapter to rate pain-related impairment for any condition that can be adequately rated on the basis of the body and organn

3

> impairment rating systems given in other chapters of the Guides. (5th ed, 571)

> In this case, the subjective reports by [Officer Toler] are commonly associated with someone who has undergone meniscal surgery. Therefore, the *Guides* are clear that providing additional impairment is not appropriate.

> If, hypothetically, the patient had marked pain, objective documentation of interference with activities [of] daily living, and/or significant gait disorder, then it may be reasonable to assign additional impairment, up to 3% whole person, for pain. However, none of these factors are documented in this case. It is clear that the impairment in this case is based solely on the diagnosis-based estimate, i.e. 4% whole person.

Dr. Roberts subsequently filed a supplemental report to his IME wherein he stood by his additional 2% rating for pain notwithstanding Dr. Brigham's report. Dr. Roberts' supplement again emphasized the language of Figure 18-1, which allows for an increase of a whole person impairment rating by up to 3% "[if] the pain-related impairment appears to increase the burden of the individual's condition **slightly**."[2] Dr. Roberts also noted the following language from Section 18.3 of the *Guides*, which he faulted Dr. Brigham for overlooking: "Thus, if an **examining** physician determines that an individual has a pain-related impairment, he or she will have the additional task of deciding whether or not that impairment has already been adequately incorporated into the rating the person has received on the basis of other chapters of the guides."[3] Dr. Roberts highlighted that, as he physically examined Officer Toler, he was in the best position to render an opinion regarding an additional rating for pain.

---

[2] Emphasis added by Dr. Roberts.

[3] Emphasis added by Dr. Roberts.

Officer Toler filed an objection to the admission of Dr. Brigham's report as direct evidence. Officer Toler noted that Dr. Brigham "never met, interviewed or examined" him. But his primary argument was that Dr. Brigham is not a "physician" as defined by KRS Chapter 342, the Workers' Compensation Statutes, because he is not licensed in the Commonwealth of Kentucky.[4] Consequently, Officer Toler argued, Dr. Brigham's report was inadmissible. Officer Toler reasoned:

> Pursuant to 803 KAR[5] 25:010, §14: "The Rules of Evidence prescribed by the Kentucky Supreme Court shall apply in all proceedings before the ALJ except as varied by specific statute and this administrative regulation." The only variances which allow reports to be filed as direct testimony are medical reports by "physicians." (803 KAR 25:010, §11 [and] KRS 342.033) and Vocational Reports (803 KAR 25:010, §9).

> 803 KAR 25:010, §10 allows for the filing of medical reports of "physicians." Pursuant to KRS 342.0011 § (32), "Physician" means "physicians and surgeons, psychologists, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners acting within the scope of their license issued by the Commonwealth." Pursuant to 803 KAR 25:010 § 10(1) a party shall not introduce direct testimony from more than two (2) physicians. [. . .]

> As Dr. Brigham is not a "Physician" as defined by the Regulations/Statutes, his report cannot be filed into evidence by Notice.

The ALJ did not rule on the admissibility of Dr. Brigham's report until after the final hearing.[6] In the ALJ's Opinion and Order, he ruled that Dr. Brigham's report was admissible:

---

[4] Dr. Brigham is licensed to practice medicine in Hawaii, Maine, and California.

[5] Kentucky Administrative Regulation.

[6] Neither party objected to the ALJ's deferral of the ruling under 803 KAR 25:010, §10(6)(e), which directs that "[t]he administrative law judge shall rule on the

5

19. [Officer Toler] has challenged the admissibility of the report of Dr. Brigham due to his being a physician licensed outside of the Commonwealth based upon the definition of "Physician" as it appears in KRS 342.0011 which provides:

> "Physician" means physicians and surgeons, psychologists, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners acting within the scope of their license issued by the Commonwealth.

20. The ALJ notes that these definitions are listed with the caveat, "unless the context requires otherwise" and finds that the intent of this particular provision is not to limit the ability of otherwise qualified physicians to render opinions that may be used in Workers' Compensation jurisprudence. Additionally, Dr. Brigham possesses a Kentucky Physician Index Number on file with the Department of Workers' Claims which provides significant context to the interpretation of this definition.

21. The ALJ therefore finds that the context of the definition of the "Physician" dictates a more expansive definition of the term than that suggested by [Officer Toler] and that to conclude otherwise would frustrate the aims of the Department that has provided Dr. Brigham with a Physician Index Number. The ALJ thus finds that the report of Dr. Brigham is admissible herein.

The ALJ further found that "the pain described by [Officer Toler] and documented by the evidence of record herein does not rise to the level of that referenced by the AMA Guides in order to support an impairment rating in excess of what is associated with [Officer Toler's] Meniscectomy." The ALJ accordingly found Dr. Brigham's opinion to be more credible than Dr. Roberts' and did not award Officer Toler an additional 2% impairment rating for pain.

Officer Toler filed a Petition for Reconsideration (PFR) from the ALJ's Opinion and Order. In it, he again argued that Dr. Brigham did not meet the

---

objection [to a medical report] within ten (10) days of the response or the date the response is due."

6

definition of "physician" under the Workers' Compensation Statutes, and his opinions could not "be admitted into evidence in this matter, nor relied upon by this ALJ." Additionally, Officer Toler's PFR correctly pointed out that the ALJ's Opinion and Order inaccurately stated that Dr. Brigham physically examined Officer Toler. Officer Toler contended that

> this error [was] important, given that the subjective complaints of pain noted by Dr. Roberts, and as described in his report, are based upon actual examination and observation of Officer Toler. The fact that Dr. Brigham did not [examine]Officer Toler impairs his ability to accurately assess the level of pain which Officer Toler experienced, and its affects upon him.

The ALJ denied Officer Toler's PFR without analysis, stating only that it was "an impermissible re-argument of the merits of the claim."

On appeal to the Board, Officer Toler reasserted that Dr. Brigham did not qualify as a "physician" under KRS 342.0011(32). In addition, he argued that Dr. Brigham could not make a pain rating assessment for Officer Toler because he conducted a records review and not a physical examination. The Board unanimously disagreed on both fronts, and affirmed the ALJ. Concerning whether Dr. Brigham met the definition of "physician," the Board ruled:

> While we acknowledge KRS 342.0011(32) defines "physicians" as one of the specified practitioners acting within the scope of his or her license issued by the Commonwealth, the opening caveat—i.e. "unless the context otherwise requires"—does, as interpreted by the ALJ, seemingly afford the ALJ the discretion to look beyond the confines of the definition. Thus, we hold the ALJ's interpretation of the caveat is harmonious with the wide discretion afforded to Administrative Law Judges in the workers' compensation arena by both statutory and case law.
>
> The ALJ set forth a thorough and cogent explanation why he believes the statute permits him to rely upon Dr. Brigham's opinions despite the fact that he is not licensed to practice medicine in Kentucky. Persuasive to the ALJ is the fact that Dr.

7

Brigham possesses a Physician Index Number on file with the Department of Workers' Claims. The ALJ ultimately concluded that a more expansive definition of "physician" is appropriate in this context, as the objectives of the Department would be frustrated if the opinions of a physician to whom the Department issued a Physician Index Number were excluded from consideration. Indeed, we find there to be an illogical notion for the Department of Workers' Claims to issue a Physician Index Number to a physician upon whom an ALJ could not rely.

Next, the Board disagreed that Dr. Brigham had to physically examine Officer Toler before he could assess whether Officer Toler was entitled to an additional impairment rating for pain. It reasoned:

Dr. Brigham's May 6, 2020, report, firmly demonstrates he reviewed the records of both Drs. Roberts and Kenny in detail. In his "Clinical Summary," as set forth verbatim herein, Dr. Brigham noted [Officer] Toler's pain level when examined by both physicians. On August 7, 2018, when Toler was examined by his treating physician, Dr. Kenney, Toler's pain level was a one out of ten, and Dr. Kenney returned Toler to work without any restrictions. When Toler was examined by Dr. Roberts on December 5, 2018, his pain level was a three out of ten. In the subsequent section of his report entitled "Critique and Discussion of Rating Pain," Dr. Brigham set forth his reasoning over the course of five pages, for concluding Toler is not entitled to an impairment rating for pain. Relying upon the medical records of Drs. Roberts and Kenney, Dr. Brigham concluded Toler's "subjective report of pain is minimal." Thereafter, citing to Sections 1.5, 18.3, 18.3a, and 18.3b of the AMA Guides, Dr. Brigham concluded that, with [Officer] Toler's minimal reports of pain, "the Guides are clear that providing additional impairment is not appropriate." Dr. Brigham is fully entitled to rely upon the records of Drs. Roberts and Kenney in utilizing the AMA Guides to reach his conclusion.

We acknowledge the critique of Dr. Roberts as set forth in his May 14, 2020, supplemental report, namely that Figure 18-1 ("Algorithm for Rating Pain-Related Impairment in Conditions Associated with Conventionally Ratable Impairment") on page 574 of the AMA Guides refers to "the examiner." However, there is nothing within the AMA Guides, which directly mandates only a physician who conducts a physical examination of a claimant can formulate a pain rating assessment. Further, while the fact that Dr. Brigham did not examine [Officer] Toler is something the ALJ

8

had the discretion to find compelling, it does not render Dr. Brigham's opinions inadmissible. Rather, it merely goes to the weight the ALJ ultimately chooses to give to his opinions. Here, the ALJ chose to give weight to Dr. Brigham's opinions over those of Dr. Roberts, and this Board has neither the inclination nor the authority to take that discretion away.

Officer Toler then appealed the Board's ruling to the Court of Appeals, which likewise upheld the ALJ's Opinion and Order. The Court of Appeals simply held that "the Board's analysis of the issues raised by [Officer] Toler on appeal is correct."[7]

Additional facts are discussed below as necessary.

## II. ANALYSIS

The function of this Court in reviewing an ALJ's decision is "to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude."[8] And, while an ALJ's decision is generally entitled to a great deal of deference, this Court is "bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*."[9] Accordingly, as this case requires us to interpret the definition of "physician" under KRS 342.0011, the ALJ's construction of the statute is entitled to no deference. In that vein, we reiterate our well-established standard for interpreting statutes enacted by our legislature:

---

[7] *Toler v. Oldham Cnty. Fiscal Court*, 2021-CA-0325-WC, 2021 WL 3234306, at *3 (Ky. App. July 30, 2021).

[8] *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 688 (Ky. 1992).

[9] *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018).

9

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration.[10]

Stated differently, we must "assume that the Legislature meant exactly what it said, and said exactly what it meant," and if the plain language of the statute is clear, our inquiry ends.[11]

### A. Dr. Brigham is not a "physician" as defined by KRS 342.0011(32).

The Kentucky Rules of Evidence must be followed in all proceedings before an ALJ, except as varied by statute or 803 KAR 25:010.[12] One such variance is provided for in 803 KAR 25:010, §10(6)(a), which states: "Upon notice, a party may file evidence from two (2) physicians in accordance with KRS 342.033, either by deposition or medical report, which shall be admitted into evidence without further order if an objection is not filed." In turn, KRS 342.033 provides, in relevant part, that "[a] party may introduce direct testimony from a physician through a written medical report. The report shall become a part of the evidentiary record, subject to the right of an adverse party to object to the admissibility of the report and to cross-examine the reporting physician."

As discussed above, Officer Toler objected to the admissibility of Dr. Brigham's report in this case based on his contention that Dr. Brigham was

---

[10] *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011).

[11] *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017).

[12] 803 KAR 25:010, §14(1).

not a "physician" under KRS 342.0011.[13]  That statute declares: "As used in this chapter, unless the context otherwise requires . . . 'Physician' means physicians and surgeons, psychologists, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners **acting within the scope of their license issued by the Commonwealth**[.]"[14]  The statute's prefatory phrase "unless context otherwise requires" means that provided definition of "physician" must be applied, unless the context in which it is found compels a different definition.

Here, the context is the introduction of direct testimony through a physician's report, i.e., providing medical opinions for use in workers' compensation cases.  The ALJ found that this context should permit the expansion of the definition of "physician" to include individuals who do not have a Kentucky medical license in order to widen the pool of physicians qualified to provide medical opinions in workers' compensation cases.  The legislature may decide in the future to widen the pool of potential medical experts.  However, the statutory language is limited so that only physicians licensed in Kentucky may provide such evidence.  We are therefore bound to rule in accordance with the plain language of the statute.

By way of example, *Bright v. American Greetings Corp.*, is the only case in our jurisprudence wherein we held that the context in which the term

---

[13] Oldham argues that Officer Toler's objection was untimely filed.  However, Oldham did not raise this argument before the ALJ, the Board, or the Court of Appeals.  We accordingly decline to address it.

[14] KRS 342.0011(32) (emphasis added).

"physician" was used necessitated an altered definition.[15]  In *Bright*, the employee claimed that he suffered work-related hearing loss and submitted an evaluation from an audiologist who was an appointed university evaluator.[16] The employer argued that the audiologist's testimony was inadmissible because audiologists are not listed in KRS 342.0011(32).[17]  This Court disagreed, and held that "testimony concerning the cause of a hearing impairment that is made by an audiologist who is designated as a university evaluator is admissible even though audiologists are not included in KRS 342.0011(32)."[18] The *Bright* Court based its holding on KRS 342.315, which provides in relevant part:

> (1) For workers who have had injuries or occupational hearing loss, the commissioner shall contract with the University of Kentucky and the University of Louisville medical schools to evaluate workers.  For workers who have become affected by occupational diseases, the commissioner shall contract with the University of Kentucky and the University of Louisville medical schools, or other physicians otherwise duly qualified as "B" readers who are licensed in the Commonwealth and are board-certified pulmonary specialists.  Referral for evaluation may be made whenever a medical question is at issue.

> (2) The physicians and institutions performing evaluations pursuant to this section shall render reports encompassing their findings and opinions in the form prescribed by the commissioner. Except as otherwise provided in KRS 342.316, the clinical findings and opinions of the designated evaluator shall be afforded presumptive weight by administrative law judges and the burden to overcome such findings and opinions shall fall on the opponent of that evidence.  When administrative law judges reject the clinical findings and opinions of the designated evaluator, they shall

---

[15] 62 S.W.3d 381 (Ky. 2001).

[16] *Id.* at 382-83.

[17] *Id.* at 384.

[18] *Id.*

specifically state in the order the reasons for rejecting that evidence.

This Court interpreted KRS 342.315(2) to mean that "an ALJ is authorized to weigh a university evaluator's testimony and to disregard it if a reasonable basis for doing so is stated."[19] In other words, the ALJ could consider the audiologist's evaluation as though it were a physician's report submitted as direct testimony because the specific language of KRS 342.315(2) compelled an altered definition of "physician."

In the case at bar, there is nothing in KRS 342.033, regarding the admission of a physician's report into evidence, that compels the definition of physician to include physicians not licensed in Kentucky.

Similarly, we do not find it dispositive that Dr. Brigham was issued a Physician Index Number by the Department of Workers' Claims. The administrative regulation governing the issuance of Physician Index Numbers provides:

> (4) The commissioner shall establish a medical qualifications index.
>
>> (a) An index number shall be assigned to a physician upon the filing of the physician's qualifications.
>>
>> (b) Any physician who has been assigned an index number may offer the assigned number in lieu of stating qualifications.
>>
>> (c) Qualifications shall be revised or updated by submitting revisions to the commissioner.
>>
>> (d) A party may inquire further into the qualifications of a physician.

---

[19] *Id.*

13

(e) If the physician's qualifications have not previously been filed into the index maintained by the commissioner, the filing party shall provide sufficient information containing the physician's qualifications, and request the physician be included in the index and a number issued.[20]

As Officer Toler argues, this regulation allows for the issuance of a Physician Index Number upon a request for the same and a filing of the physician's qualifications. It does not, on its face, provide for validation of those qualifications, such as ensuring that the physician is licensed in Kentucky. Instead, it allows a party to inquire further into the qualifications of a physician, which is precisely what occurred in this case.

Based on the foregoing, we hold that Dr. Brigham does not meet the statutory definition of "physician" under KRS 342.0011(32). His report was therefore inadmissible, and the ALJ should not have considered it as evidence.

As a final point of clarification, our holding today does not apply to *treating* physicians. KRS Chapter 342 is clear that, in general, an employee is free to choose his or her own treating physician. Specifically, KRS 342.020(4) states:

In the absence of designation of a managed health care system by the employer, the employee may select medical providers to treat his injury or occupational disease. Even if the employer has designated a managed health care system, the injured employee may elect to continue treating with a physician who provided emergency medical care or treatment to the employee.[21]

---

[20] 803 KAR 25:010, §14(4)(a)-(e).

[21] *See also, e.g.*, *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993) ("[KRS 342.020(4)] allows a worker to choose her own physician and to have whatever medical treatment is reasonably necessary for the cure and/or relief of her injury.").

14

Accordingly, for example, if an employee whose employer does not have a managed health care system chooses a treating physician that is not licensed in Kentucky, KRS 342.020(4), coupled with KRS 342.0011, would compel the definition of "physician" to include a non-Kentucky licensed physician. Thus, a treating physician not licensed in Kentucky may provide evidence on behalf of the employee.

## B. Officer Toler's argument regarding Dr. Brigham's failure to physically examine him is moot.

Officer Toler also argues that Dr. Brigham was not qualified to opine on whether he was entitled to an additional impairment rating for pain because he conducted a records review and not a physical examination. But, with our opinion today, we hold that Dr. Brigham does not meet the definition of "physician" under KRS 342.0011(32), and his report is therefore inadmissible. Officer Toler's argument against the basis for Dr. Brigham's opinions contained therein is accordingly moot, and we will not address it.

## III. CONCLUSION

Based on the foregoing, the ALJ's Opinion and Order is vacated. This case is hereby remanded for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Bruce Garrett Anderson
Louisville, KY

COUNSEL FOR APPELLEE, OLDHAM COUNTY FISCAL COURT:

Thomas L. Ferreri
Ferreri Partners, PLLC

15

COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey

ADMINISTRATIVE LAW JUDGE:

Hon. Jonathan R. Weatherby