# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0298-WC

CANDY CURRENS                                                       APPELLANT

                     ON APPEAL FROM COURT OF APPEALS
V.                             NO. 2019-CA-1052
                     WORKERS' COMPENSATION BOARD
                     NO. 17-WC-67168

RJ INSULATION;                                               APPELLEES
HON. JEFF V. LAYSON, III,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Candy Currens appeals from the Court of Appeals' decision affirming the denial of permanent disability benefits. For the following reasons, we affirm.

## I. Factual and Procedural Background

While working at a client's home, Currens attempted to carry two spray-foam canisters down a set of stairs and into the basement. Unfortunately, Currens tripped and tumbled down roughly fifteen steps, sustaining several injuries. Currens immediately called her supervisor at RJ Insulation to report the incident but stayed on site to finish her shift. Despite feeling sore the next day Currens reported to work and was assigned a helper to assist throughout

the day.  After missing the next several days of work due to pain, Currens sought medical treatment at a local urgent care where she was treated for several injuries and referred to Dr. McClung, an orthopedic surgeon, for further evaluation.

After examining Currens, Dr. McClung ordered x-rays and a boot for her to wear.  Additionally, he suggested Currens have an MRI taken of her lumbar and thoracic spine, as well as both knees.  Currens did not do the imaging. Currens returned to work roughly four months after her injury but RJ Insulation terminated her employment shortly thereafter, ostensibly for failing to report for a shift.  Afterwards, Currens filed a claim with the Department of Workers' Claims seeking permanent and temporary wage and medical benefits based on the injuries she suffered when she fell.

Following a Benefit Review Conference (BRC), all parties agreed that Currens had sustained a work-related injury.  However, RJ Insulation disputed Currens' claim that the injury was sufficient for a permanent impairment rating.  RJ Insulation argued that any lasting impairment was a result of Currens' pre-existing, active and non-work related health conditions.  Most notably, for purposes of this appeal, RJ Insulation pointed to Currens' long standing complaint of cervical radiculopathy, for which she had sought treatment in the months prior to her injury.  The cervical radiculopathy diagnosis became a point of particular contention when Dr. Wunder, who examined Currens at her counsel's request, failed to acknowledge that she had

sought treatment for cervical radiculopathy from Dr. Barczewski, mere days prior to falling.

After a final hearing, the Administrative Law Judge (ALJ) determined that Dr. Wunder's report lacked credibility and did not constitute substantial evidence. Instead, the ALJ relied on Dr. Bender's report, who examined Currens at RJ Insulation's request, and on Dr. McClung's testimony, that Currens only sustained temporary injuries and required no additional medical treatment. Currens appealed the ALJ's decision to the Board, which affirmed the ALJ's conclusion that the fall only resulted in a temporary injury.[1] On review, the Court of Appeals affirmed the Board.

## II. Standard of Review

As the primary fact-finder in workers' compensation cases, the ALJ is the sole authority responsible for judging the "weight, credibility, substance and inferences to be drawn from the evidence." *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018) (internal quotation and citation omitted). If the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding." *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005). Consequently, the ALJ's factual findings are only disturbed if they amount to an abuse of discretion. 544 S.W.3d at 632.

---

[1] The Board remanded the case to the ALJ for additional findings regarding the commencement date of temporary total disability and to specify the exact nature of Currens' work-related injuries.

3

However, on matters of legal interpretation we review the lower court's decisions *de novo.  Id.* at 631.

### III. Analysis

Currens argues that as a matter of law the Court of Appeals and the Board erred by affirming the ALJ's conclusion that her fall did not result in a permanent injury.  To support her position Currens asserts that our holding in *McNutt Constr./First Gen. Servs. v. Scott,* 40 S.W.3d 854 (Ky. 2001), was a departure from the statutory intent of the Workers' Compensation Act and asserts that when a worker is diagnosed with an injury, he or she experiences a permanent bodily change.  Currens further argues that the ALJ's decision to reject Dr. Wunder's medical report was reversible error pursuant to *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839 (Ky. 2004).  We disagree with both of her contentions.

Despite Currens' preservation deficiency,[2] her outcome does not change even under *de novo* review.  While Currens is correct that KRS[3] 342.0011(1) defines injury and excludes aging specifically, her analysis fails to contemplate the term's scope.  The statute defines "injury" as "any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical

[2] RJ Insulation argues that Currens' failure to present the statutory argument to the Board precludes our review.

[3] Kentucky Revised Statutes.

4

findings." *Id.* The plain language of the statute requires that the injury be work-related and the proximate cause of the claimant's diagnosis. The analysis in *McNutt* is consistent with our interpretation of KRS 342.0011(1). We reasoned in *McNutt* "that only those harmful changes which are proximately caused by work-related trauma are compensable pursuant to Chapter 342." 40 S.W.3d at 859. Twenty years later the definition in *McNutt* remains accurate.

Currens' argument that the ALJ's decision to reject Dr. Wunder's medical report was done in error similarly fails to pass muster. The core of Currens' argument may be boiled down to an immaterial factual distinction she identifies between her own case and Cepero's. Dr. Wunder received all of Currens' relevant medical records, whereas Dr. Changaris, the relevant physician in *Cepero*, had conflicting or missing information upon which he based his diagnosis. 132 S.W.3d at 844. However, *Cepero's* central conclusion was that a physician's medical determinations must be based on accurate information to become "substantial evidence." *Id.* at 842–43. Dr. Wunder's access to Currens' medical history, including her recent treatment for cervical radiculopathy, was immaterial because his report was quite simply factually inaccurate. Dr. Wunder stated that Currens had not sought treatment for cervical radiculopathy since 2010 despite Dr. Barczewski's records clearly indicating that she sought treatment for the same condition days before her injury. Given these facts, the ALJ properly rejected Dr. Wunder's report under *Cepero*.

5

Currens' final argument on appeal claims that the ALJ erred by failing to conduct a *Finley v. DBM Technologies* analysis. 217 S.W.3d 261, 265 (Ky. App. 2007). The reviewing ALJ is required to conduct a *Finley* analysis when the claimant has a "pre-existing condition that is both asymptomatic and produces no impairment prior to the work-related injury[.]" *Id.* We agree with the Court of Appeals that the ALJ was not required to conduct the analysis because he had rejected Dr. Wunder's report. Since Drs. Bender and McClung both concluded that Currens sustained only temporary soft tissue injuries, and because Currens' cervical complaints had an independent cause, conducting a *Finley* analysis would have been superfluous.

### IV. Conclusion

For the reasons stated above, we affirm the Court of Appeals' decision.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Larry Duane Ashlock
Ashlock Law Group, PLLC


COUNSEL FOR APPELLEE,
RJ Insulation:

Clark David Cotton
Stephanie Dawn Ross
Reminger Co., L.P.A.

COUNSEL FOR WORKERS'
COMPENSATION BOARD:

Michael Wayne Alvey
Workers' Compensation Board