RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1250-WC

MICHAEL HARDIN                                             APPELLANT

|  | PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NOS. WC-20-99700, WC-21-00756, AND WC-21-00795 |

FORD MOTOR CO.; MONICA J.
RICE-SMITH, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                  APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Michael Hardin appeals from the September 22, 2023, opinion of the Workers' Compensation Board (the "Board") affirming the February 16, 2023, opinion and order of the Administrative Law Judge ("ALJ") dismissing three workers' compensation injury claims Hardin filed against Ford Motor Company (the "Employer"). For the following reasons, we affirm the Board's opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2019, while employed by Employer, Hardin alleged that he sustained a work-related injury to his left elbow after falling. On December 2, 2019, Hardin fell again and alleged injuries to his lower back. Additionally, Hardin alleged cumulative trauma injuries to his neck and left arm manifesting on March 15, 2020.

Hardin initiated a claim for benefits under Kentucky Revised Statutes ("KRS") Chapter 342, the Workers' Compensation chapter. After reviewing the evidence, the ALJ dismissed all Hardin's claims based on his failure to prove he sustained any permanent work-related injuries. The ALJ awarded only a period of medical benefits for the May and December injuries, as Hardin did not miss work due to either injury.

Hardin testified via deposition and a hearing. The ALJ summarized Hardin's testimony as follows:

> [Hardin] is 61 years old with a high school education. He served three years in the Marines. He has work experience as an assistant pressman and delivery driver. He continues to work at Ford putting the COVID masks out. He testified this is not a permanent job. He advised he earns less money because he is not able to work any overtime.
>
> On June 25, 2012, Hardin began working for Ford at the Louisville plant as an assembly line worker. He worked on the roof bowls job. He affixed roof bowls onto the tops of vehicles in production. The job required him to

work with his arms extended for prolonged periods and bend at the waist. He processed about 850 to 875 units a shift. On June 25, 2018, he transferred to the Ford Truck plant. On April 22, 2019, he began working in the rag fill position on the line. The job required him to screw two bolts into the grill and put the windshield wiper plugs together. He also had to wait for the hoses to get filled up in different areas of the truck and then remove the hoses. He then hit a button sending the carrier back. He would scan the cameras that go in the trucks and throw them in the bed. He had to bend down to the bottom of the front of the car and put a reader on the air conditioner. He also had to adjust the reader volume. The drill gun used to place the screws in the grill weighed about 13 pounds. He had to carry it with him, it was not one suspended from the ceiling. The hoses he removed weighed four pounds, 12 pounds, and 14.7 pounds. There were different types of trucks, so he was taking the hoses off at different heights and angles every time. The job required him to reach out from his body and above his shoulders. He had to bend up and down. The work was repetitive and fast pace. He processed 870 to 900 units a shift.

On May 26, 2019, while Hardin[] was walking around the back side of a truck, his feet went out from under him, he fell hitting the railing. He fell onto his left hip, back, and left elbow. He reported the fall to his team leader, who sent him to Ford medical. Medical got a cab to take him to Jewish Hospital. He only missed the remainder of that shift. He returned to the same job but had help for four days. He was never on any restrictions for his elbow. He continues to have some soreness in his elbow.

On December 2, 2019, after putting the hoses in the carrier and sending it back, he slid coming down the ramp, his left leg slid off the ramp and he almost did the splits, he caught himself with his left arm, and pulled himself back up to the truck. He felt immediate pain in

-3-

his low back. He only had a half hour left to work so he finished his shift and went home. He used heat and ice over the weekend, but his back did not get any better. When he presented for his next shift, he reported the injury and went to medical. Medical placed him on light duty installing a little air hose. He did not miss any time from work. He continues to have a little pain in his back.

On March 15, 2020, he started having numbness and what felt like a little electricity volt running through the web between his forefinger and thumb on his left hand. It started off just irritating, then it would not be there, and then it would come back worse. As the weeks went by, it got worse. It started shooting pain up his arm to his elbow. His fingertips started to burn. During the time from March 2020 to June 2020, the plant was shut down for a month due to COVID. When Hardin returned to working using the vibratory tool to shoot the bolts and moving the hoses, it kept getting worse. On June 9, 2020, he went to medical. The doctor at medical sent him to Kleinert & Kutz. Kleinert & Kutz gave him a shot in his hand and advised it could be coming from his neck. He started treating with Dr. Becherer for his neck. After obtaining an MRI and EMG, Dr. Becherer eventually performed two cervical surgeries. The first surgery was December 7, 2020. After surgery, Hardin was off work until May 2021. He returned to work on light duty handing out COVID masks on May 27, 2021. He continued handing out masks until October 15, 2021. He underwent a second surgery on October 27, 2021. Dr. Becherer referred him to Dr. Steven Reiss on March 16, 2022. Dr. Reiss performed a myelogram and EMG. He recommended a third surgery. Hardin[] did not undergo the third surgery because Dr. Reiss could not guarantee it would help him. Dr. Reiss sent him to KORT for an FCE and placed him on permanent restrictions.

Hardin[] continues to have stiffness in his neck. He does not have much movement in his neck. He cannot lift any weight with his left arm. He has pain and stiffness in his

left elbow every morning. He wears a brace on his elbow. At his deposition, he testified that he did not have any issues with his low back. At the final hearing, he testified he has stiffness, aches, and pains when he tries to get out of the bed. He testified that the walking he does while putting out the masks at work causes back pain. He has pain through the lower back up to the top of his shoulders. He still mows his grass, but it takes him longer than before. He is unable to golf or bowl. He has difficulty sleeping due to his pain. He currently takes Flexeril for back spasms. He does not believe he could return to any of his pre-injury jobs on the assembly line. He believes he is totally disabled.

The ALJ dismissed Hardin's three injury claims based on his failure to prove that he sustained any permanent work-related injuries. Specifically, as it relates to the issues in this appeal, the ALJ stated as follows:

> Hardin failed to satisfy his burden of proving he sustained any left arm and neck injuries due to repetitive job duties at Ford. Hardin relies on the opinion of Dr. Farrage, which does not provide substantial evidence of an injury resulting from repetitive job duties. His opinion is based on an inaccurate and incomplete history, and it does not support any repetitive motion injury.
>
> Dr. Farrage's report does not support a repetitive motion injury. First, his report is based on an inaccurate account of the alleged injury. He does not even note a March 15, 2020[,] injury nor does he note the nature of the injury alleged by Hardin. Hardin alleged a repetitive motion injury with the development of symptoms which gradually progressed. Dr. Farage does not document the history of pain beginning in the hand and progressing up the arm that Hardin supplied in his testimony. His report contains no discussion of any repetitive job duties or gradual progression of symptoms, instead he notes a specific incident on November 30, 2020, that he notes

aggravated the left arm symptoms and cervical involvement. This injury date is not mentioned in any other reports or in Hardin's own testimony. Additionally, Dr. Farrage's report does not contain any discussion of Hardin's work activities. Although, he indicates Hardin's overall clinical presentation and historical account are consistent with the proposed mechanism of injury, the mechanism of injury noted in his report is not the same mechanism alleged by Hardin. Again, his report documents a specific incident and does not discuss any repetitive work activities. Finally, when he discusses the axial loading and lateral shear forces experienced by the cervical spine, he states they resulted in an "acute" disc herniation, which would indicate a sudden onset not the gradual progression and repetitive cumulative injury alleged by Hardin. Dr. Farrage's report simply does not support any injury resulting from repetitive job duties.

Based on the foregoing, the ALJ finds that Hardin failed to satisfy his burden of proving he sustained any cervical injury related to his job duties on March 15, 2020.

Thereafter, Hardin filed a petition for reconsideration with the ALJ, arguing that the ALJ misinterpreted and erroneously rejected Dr. Farrage's opinions and conclusions. In overruling this argument, the ALJ stated the following:

[T]he remainder of Hardin's petition is a rearguing of the facts. As fact finder, the ALJ has the authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308 ([Ky.] 1993). The ALJ had the right to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15 ([Ky.] 1977). The ALJ

-6-

explained her rationale and reasoning for finding Dr. Farrage's report was not substantial evidence proving a repetitive or cumulative trauma injury. In the last paragraph on page 8 of the opinion, the ALJ provides her multiple specific reasons for finding Dr. Farrage's opinion does not support a repetitive trauma injury. Finally, it is not that Hardin intentionally hid anything from any physician, but his history of a gradual injury is not consistent with the acute injury described and diagnosed by Dr. Farrage.

Hardin subsequently filed an appeal with the Board, again arguing that the ALJ erroneously misinterpreted Dr. Farrage's report regarding Hardin's alleged neck and left arm injuries, which he claimed manifested on March 15, 2020. The Board affirmed the ALJ's decision, stating:

A review of the medical evidence and Hardin's testimony demonstrates the ALJ had an accurate understanding of Dr. Farrage's report, the balance of the medical evidence, and Hardin's testimony. Just as important, the ALJ's comparison of Hardin's testimony to Dr. Farrage's report cannot be challenged. Consequently, the contents of Dr. Farrage's report supports the ALJ's determination Hardin did not sustain a cervical and arm injury due to repetitive [] cumulative trauma occurring while in the employ of Ford. Dr. Farrage's report makes no mention of a cumulative trauma injury. Without question, Dr. Farrage attributes no significance to March 15, 2020, but rather identifies a November 30, 2020, injury which all other medical records fail to reference.

Even though the ALJ did not rely upon Ford's medical records or the opinions of Drs. Loeb and Terry, those records amply support a finding that Hardin did not sustain a cumulative trauma injury of any type manifesting on March 15, 2020. Hardin's burden on appeal is to demonstrate the evidence of record compels a

different result. In this case, the medical evidence including Dr. Farrage's medical report does not compel a finding Hardin sustained a cumulative trauma injury manifesting on March 15, 2020. Since the ALJ's decision with regard to the issue raised on appeal is supported by substantial evidence, we are without authority to disturb the decision on appeal. *Special Fund v. Francis*, [708 S.W.2d 641, 643 (Ky. 1986)].

This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### a. Standard of Review

The Kentucky Supreme Court has stated that a workers' compensation claimant "bears the burden of proof and risk of non-persuasion before the fact-finder with regard to every element of a claim." *Clark County Bd. of Educ. v. Jacobs*, 278 S.W.3d 140, 143 (Ky. 2009) (citations omitted). Further, "[w]hen the party with the burden of proof fails to convince the ALJ, the party's burden on appeal is to show that overwhelming favorable evidence compelled a favorable finding, in other words, that no reasonable person could fail to be persuaded by the evidence." *Id.* (citation omitted).

Thus, "[t]he crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001) (citation omitted). Hardin must show that

there was no substantial evidence of probative value to support the ALJ's findings on causation to reverse the ALJ's decision. *Francis*, 708 S.W.2d at 644.

Additionally, "[t]he function of further review of the [Board] in the Court of Appeals is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

### b. Discussion

Hardin contends in this appeal that the ALJ erroneously rejected Dr. Farrage's opinions and conclusions by misinterpreting Dr. Farrage's opinion concerning the causation of Hardin's neck and left arm injuries. Hardin further contends that the ALJ erroneously relied on and misinterpreted the case *Cepero v. Fabricated Metals Corporation*, 132 S.W.3d 839 (Ky. 2004). We disagree.

In this case, Hardin alleged cumulative trauma to his left arm and neck manifesting on or around March 15, 2020. Dr. Farrage attributed the entire condition to an acute work-related injury occurring on November 30, 2020. However, Hardin never alleged an acute injury on November 30, 2020. Nor did he move to amend the claim to include that injury date despite filing Dr. Farrage's report on September 13, 2021, and a supplemental report on June 8, 2022. Moreover, Hardin never testified to an acute injury on November 30, 2020.

Here, the ALJ determined that Dr. Farrage's report did not support the claim for cumulative trauma resulting in injury. As the ALJ stated, "Dr. Farrage's report simply does not support any injury resulting from repetitive job duties." As noted by a panel of this Court:

> KRS 342.285 designates the ALJ as finder of fact and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof.

*Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009) (citations omitted). "Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is 'conclusive and binding as to all questions of fact,' and that the Board 'shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]'" *Id.* (citations omitted).

Thus, the ALJ was well within her discretion to give more or less weight to Dr. Farrage's report and to "believe or disbelieve various parts of the evidence[.]" *Id.* Having reviewed the evidence and the Employer's assertions concerning why the ALJ's findings are erroneous, we are not persuaded that "overwhelming favorable evidence compelled a favorable finding" in Hardin's

favor. *Jacobs*, 278 S.W.3d at 143. Moreover, Hardin has failed to convince us that any relevant evidence was overlooked or misunderstood. The view of the evidence taken by the ALJ and the Board was neither patently unreasonable nor flagrantly implausible, and we are not persuaded that any controlling statute or precedent was overlooked, misapplied, or misconstrued.

Additionally, we agree with the Board's conclusion that the ALJ did not reject Dr. Farrage's opinion based on an inaccurate or incomplete medical history as in *Cepero*, 132 S.W.3d at 842. Instead, as discussed by the Board, the ALJ concluded that Dr. Farrage's opinion did not constitute substantial evidence to support a cumulative injury as Hardin alleged. We discern no error.

## **CONCLUSION**

We affirm the Board's opinion affirming the ALJ's opinion and order dismissing Hardin's claims.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ched Jennings
Louisville, Kentucky

BRIEF FOR APPELLEE FORD
MOTOR CO.:

Scott E. Burroughs
Brian W. Davidson
Louisville, Kentucky