# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2024-SC-0214-WC

PIKEVILLE MEDICAL CENTER APPELLANT


V.

ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-1424
WORKERS' COMPENSATION BOARD NO. WC-20-51809


CHARLOTTE BAKER; HONORABLE APPELLEES
CHRIS GREG DAVIS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Pikeville Medical Center appeals from a decision of the Court of Appeals affirming the decision of the Workers' Compensation Board which affirmed an Administrative Law Judge's ("ALJ") Opinion and Order awarding Charlotte Baker permanent total disability ("PTD") benefits for a work-related injury. On appeal, Pikeville Medical argues the award of PTD was not supported by substantial evidence. Having carefully reviewed the record, law, and briefs, we affirm.

## FACTS AND PROCEDURAL HISTORY

Baker is a registered nurse who was employed by Pikeville Medical for forty years. On December 12, 2020, she injured her left shoulder, left hip, and buttocks when she fell backwards while assisting with the transfer of a patient

from an ambulance. Baker was treated at the emergency department of the Highlands ARH Regional Medical Center where she was diagnosed with a "closed fracture of neck of left humerus." She was prescribed pain medication and discharged.

Subsequently, Baker obtained follow-up treatment and missed work for three months during which time she wore a sling. However, Baker could not undergo corrective surgery because of non-work-related heart issues. Although her pain persisted following the injury, Baker returned to work without restriction from May 2021 until January 14, 2022, after which time she ceased working altogether. Baker later explained she returned to work because her husband needed her health insurance benefits to continue his cancer treatment.

On September 12, 2022, Dr. Anthony J. McEldowney physically examined Baker and recorded a history of the work-related incident. He also reviewed medical records from Pikeville Medical, Highland ARH and UK Healthcare including MRIs, radiographs, and CT scans taken before and after the injury.

The physical examination revealed a difference between Baker's right-hand grip strength of 16 kg and her left-hand grip strength of 9 kg. Dr. McEldowney further noted:

> A/PROM left shoulder without grind, mechanical symptoms, or gross instability with flexion 90/120, extension 55, abduction 80/90, adduction 40/40, ER 80/80, and IR 90 (approximately T10 level). Bilateral shoulders with negative impingement maneuver. Right shoulder negative O'Brien maneuver, and unable to fully test O'Brien maneuver left shoulder because of limited range of motion.

2

He diagnosed Baker with "[c]losed comminuted mildly displaced left shoulder surgical neck fracture" and "left sacroiliac sprain."

Based on the Fifth Edition of the AMA *Guides to the Evaluation of Permanent Impairment* ("*Guides*"), Dr. McEldowney assessed an 8% impairment to Baker's left shoulder which resulted in a 5% whole body impairment. He opined the December 12, 2020, work incident was the sole cause of Baker's current impairment. Dr. McEldowney further concluded Baker did not retain the physical capacity to return to her former work as a nurse and placed various restrictions on Baker's prospective ability to work including

> [n]o frequent, repetitive, or sustained activities left shoulder, specifically over the shoulder and reaching away from the body; maximum lift left arm 8 pounds; maximum carry left arm 6 pounds, maximum isolated push and pull left arm 30 pounds; avoid prolonged sitting and walking with position changes.

Additionally, although Dr. McEldowney did not assess an active impairment resulting from the left sacroiliac sprain, he recommended that Baker "avoid prolonged sitting and walking with position changes."

Baker filed her Form 101 seeking workers' compensation benefits on November 10, 2022. Pikeville Medical did not file a Form 111 in response or otherwise defend against Baker's claim.

Relying upon the uncontradicted opinion of Dr. McEldowney, the Administrative Law Judge (ALJ) issued an opinion, award, and order finding Baker had a 5% disability rating and lacked the capacity to return to the type of work she performed on the date of injury. Additionally, the ALJ determined

Baker was permanently and totally occupationally disabled due to the injury and was, thus, entitled to PTD benefits.

While the ALJ acknowledged that Baker's intelligence, professionalism, and education level weighed against an award of PTD, it specifically found other factors were more convincing. Particularly, the ALJ noted Baker was 65 years old and could not return to the only type of work she had performed for the last 40 years. Under these circumstances, the ALJ found "[it] is unlikely that any prospective employer would consider her for any meaningful work at that age." Additionally, the ALJ stated the severity of Baker's work restrictions "would preclude a wide array of jobs, even those considered skilled." Ultimately, the ALJ concluded:

> In short, Ms. Baker is a 65-year-old woman who would require extensive job retraining and even then, would need to find an employer willing to hire a person of her age, with no experience, and severely limiting restrictions. That sounds nearly, perhaps totally, impossible. As a result, I find Ms. Baker is permanently and totally disabled. Because she worked until January 14, 2022, albeit under duress due to her husband's health, her benefits will begin on January 15, 2022, and continue until she reaches 70 years of age.

The PTD award amounted to $979.00 per week for the specified time period. Medical benefits were also awarded for the left shoulder injury.

On the day following the entry of the ALJ's opinion, award, and order, Pikeville Medical entered an appearance and later filed a petition for

4

reconsideration.[1]  In its order denying the petition, the ALJ made the following additional findings:

> [I]t is true that Ms. Baker is educated and held a highly skilled, but at the same time physically demanding job.  However, all of the criteria to make a permanent, total disability award has been proven to my satisfaction.  She had a work-related injury, she was assigned an impairment rating, she has restrictions that prevent her from returning to any past work and the restrictions and impairment rating stem solely from her work-related injury. . . . Further, her educational level and work history may be argued do not support a PTD but these are only two factors.  Given her age, 65, and the fact that she cannot do any work she has previously done, combined with her restrictions, it is highly likely she won't be able to find work. . . . She is not going to be hired directly into a high-level managerial position and no reasonable employer would hire her for an entry level position of any type over a younger, healthier person.  I do not say that lightly with respect to Ms. Baker, but I must demonstrate the basis for my findings.  As such, the Defendant's Petition is OVERRULED.

The Board affirmed the opinion, award, and order of the ALJ on the merits.[2]  In turn, the Court of Appeals affirmed the decision of the Board.  This appeal followed.

## STANDARD OF REVIEW

Review from an ALJ's decision on a workers' compensation claim proceeds on three levels.  *Lexington Fayette Urb. Cnty Gov't v. Gosper*, 671 S.W.3d 184, 199 (Ky. 2023).  "The Board performs the first level of review[,]" as set forth in KRS 342.285, and functions essentially to correct error, "though without the power of constitutional review."  *Id.*  The Court of Appeals performs

---

[1] Additionally, we note Baker filed a petition for reconsideration; the merits of which are not at issue here and need not be recounted.

[2] We note the Board also remanded for correction of a clerical error.

5

the second level of review from the decisions of the Board pursuant to KRS 342.290 with the purpose of correcting the Board only where "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). Further review by this Court is available "as a matter of right under Section 115 of the Kentucky Constitution[,]" and is meant to address "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 200 (quoting *W. Baptist*, 827 S.W.2d at 688). Thus, we "will not simply 'third guess' the decisions of the Board and the Court of Appeals upon the same evidence." *Id.*

In determining disputed issues of fact, "the ALJ as 'the finder of fact . . . has the authority to determine the quality, character and substance of the evidence presented.'" *Id.* at 198 (quoting *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). Additionally, "an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Id.* (quoting *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009)). On appellate review, "the standard of review is whether the [factual] finding was 'clearly erroneous,' meaning 'unreasonable under the evidence presented.'" *Id.*

6

at 199 (quoting *Letcher Cnty. Bd. of Educ. v. Hall*, 576 S.W.3d 123, 126 (Ky. 2019)).

## LAW AND ANALYSIS

At the outset, we note Pikeville Medical's sole argument on appeal is that the evidence did not support the award of PTD, which is the same contention that was raised and rejected before the Board and Court of Appeals. No new or novel questions of law are presented, no precedents warrant reconsideration, and no constitutional issues are in dispute. Having thoroughly reviewed the limited record, we perceive no basis to disturb the rulings below.

KRS 342.0011(11)(c) defines "permanent total disability" as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" To determine whether a claimant is entitled to PTD, an ALJ must conduct a five-part inquiry. *City of Ashland v. Stumbo,* 461 S.W.3d 392, 396 (Ky. 2015). First, "the ALJ must determine if the claimant suffered a work-related injury." *Id.* Second, the ALJ must ascertain whether the claimant has an impairment rating. *Id.* Third, based on the impairment rating, the ALJ must determine the claimant's permanent disability rating. Fourth, the ALJ must consider whether the claimant is unable to perform any kind of work. *Id.* Finally, the ALJ must determine whether the claimant's total disability is a result of the work-related injury. *Id.*

This analysis "clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury."

7

*McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001). Relevant considerations include such factors "as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact." *Id.* "It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions." *Id.* We further explained:

> A worker's ability to do so is affected by factors such as whether the individual will be dependable and whether his physiological restrictions prohibit him from using the skills which are within his individual vocational capabilities. The statutory definition of "work" does not require a worker to be homebound in order to be found to be totally occupationally disabled.

*Id.*

Pikeville Medical first argues that the ALJ's finding as to Baker's impairment rating under the second prong of the *Stumbo* test was not accurate and "cannot form a solid basis for the remainder of the [PTD] evaluation." Specifically, Pikeville Medical challenges the reliability of the 5% impairment rating assigned by Dr. McEldowney because he did not account for a prior injury Baker suffered in 2017. Therefore, Pikeville Medical further posits that Dr. McEldowney's assessment does not reflect Baker's true impairment rating.

In his report, Dr. McEldowney acknowledged that review of the medical records pertaining to Baker's prior injury would have been "helpful to determine the extent of any applicable impairment prior to her second injury[.]" Nevertheless, he ultimately concluded she did not have an active impairment at the time of her injury on December 12, 2020.

8

Under our caselaw, an ALJ is entitled to rely upon a physician's assignment of an impairment rating so long as the opinion "is *based upon* and in *conformity with* the *Guides*." *Plumley v. Kroger, Inc.*, 557 S.W.3d 905, 913 (Ky. 2017). Moreover, we have long recognized "[t]he proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions." *Id.* at 913 (quoting *Kentucky River Enters., Inc. v. Elkins*, 107 S.W.3d 206 (Ky. 2003)). Ultimately, "this Court's only prerogative is to evaluate the ALJ's decision to ensure that it is not contrary to the evidence." *Id.*

While Pikeville Medical may disagree with Dr. McEldowney's opinion, it did not produce any evidence that his assessment failed to conform to the standard established in *Plumley*. Thus, Pikeville Medical's complaints about the accuracy of Baker's impairment rating go to the weight, rather than the sufficiency, of this medical evidence. We are convinced the ALJ acted within his discretion and authority by accepting Dr. McEldowney's uncontroverted opinion.

The remainder of Pikeville Medical's argument centers on whether the evidence supports a finding that Baker lacks the ability to perform any type of work under the fourth prong of the *Stumbo* test. Citing the fact that no medical provider opined she was unable to return to any work, Baker's minor impairment rating and education level, and her return to unrestricted work for several months following the injury, Pikeville Medical contends the evidence compelled a finding Baker was not entitled to PTD. We disagree.

9

A claimant is not required to present direct, expert testimony that he or she cannot perform any type of work. In the context of PTD benefits, the ability to perform any type of work presents an ordinary question of fact which an ALJ may resolve under the appropriate legal standard based on reasonable inferences from the evidence. *Stumbo*, 461 S.W.3d at 396. Thus, Dr. McEldowney's failure to state that Baker could not perform any type of work does not preclude the award of PTD.

Moreover, under the individualized analysis required by *Stumbo* and *McNutt*, no single factor is dispositive. While Baker's "minor" impairment rating and education level may have supported the denial of PTD, neither factor, taken alone or in tandem, necessarily compels such a result. Here, the ALJ properly considered the totality of the evidence and specifically found Baker's age, employment history, and work restrictions carried greater weight than her impairment rating and education level. It is simply not the function of this Court to reweigh the evidence and substitute its judgment for that of the factfinder. *Gosper*, 671 S.W.3d at 199-200.

Similarly, the fact that Baker returned to work for several months without formal restrictions is not determinative. As with Baker's impairment rating and education level, this evidence could perhaps have supported a finding that she was not entitled to PTD. However, we do not perceive the evidence of Baker's return to work to have been "so clear-cut and convincing" as to compel a finding in Pikeville Medical's favor. *See Lee v. International*

*Harvester Co.*, 373 S.W.2d 418, 421 (Ky. 1963) (quoting *Columbus Mining Co. v. Childers*, 265 S.W.2d 443, 445 (Ky. 1954)).

While it is true that Baker returned to work for several months following her injury, the ALJ found she worked under duress so her husband would not have to discontinue his treatment for cancer. Additionally, Dr. McEldowney's report noted that Baker remained at work despite ongoing pain. Further, his assessment of Baker's physical condition and the imposition of stringent work restrictions cast serious doubt upon the extent of her ability to work despite the previous lack of restrictions.

We perceive the evidence on this point to be capable of more than one interpretation. Thus, the ALJ had the sole authority to determine its weight, character, and credibility. *Gosper*, 671 S.W.3d at 198. Moreover, we agree with the Board that, based on the evidence of record, "the ALJ could reasonably infer Baker was working beyond her physical limitations solely for the purpose of ensuring her husband could continue treatment of his cancer and ultimately ceased work due to her inabilities resulting from the work injury." Again, the pertinent question is not whether this Court would have decided the matter differently in the first instance. Instead, our review is limited to whether the ALJ flagrantly erred in assessing the evidence. We discern no such abuse of discretion here.

While the ALJ's decision, which was affirmed by the Board and the Court of Appeals, may not have been the only possible outcome, it is not clearly unreasonable. The arguments raised by Pikeville Medical involve a routine

11

evidentiary determination and are identical to those which were analyzed and rejected by the lower tribunals. Thus, "[t]he present appeal fails to reach beyond the threshold for routine affirmance." *Laboratory Corp of America v. Smith*, 701 S.W.3d 228, 235-36 (Ky. 2024) (quoting *W. Baptist*, 827 S.W.2d at 688).

Our review of the record does not convince us that the evidence compelled a different result. The ALJ's decision was supported by substantial evidence, was not clearly erroneous, and therefore should not be disturbed. Additionally, "the fact remains that the Workers' Compensation Board and the Court of Appeals have provided adequate appellate review, and the view they took of the evidence is neither patently unreasonable nor flagrantly implausible. The case before us does not merit further appellate oversight." *Id.*

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is hereby affirmed.

Lambert, C.J.; Bisig, Conley, Keller, Nickell and Thompson, JJ., sitting. All concur. Goodwine, J., not sitting.

COUNSEL FOR APPELLANT:

Sara May
Pikeville, Kentucky


COUNSEL FOR APPELLEE:

C. Phillip Wheeler, Jr.,
Pikeville, Kentucky


ADMINISTRATIVE LAW JUDGE:

Hon. Chris Greg Davis


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey,
Chairman